UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

                    Plaintiff,

            v.

MICHAEL LY, et al.,

                    Defendants.

CASE NO. CR12-5001 BHS

ORDER DENYING MOTIONS TO
SUPPRESS

        This matter comes before the Court on Defendant Nikki Trang Trieu's ("Trieu")

motion to suppress (Dkt. 136) and Defendant Hung Viet Tran's ("Tran") motion to

suppress statements (Dkt. 139).  The Court has considered the pleadings filed in support

of and in opposition to the motions, heard live testimony of witnesses and oral argument

of counsel, and considered the remainder of the file and hereby denies the motions for the

reasons stated herein.

        Both Trieu and Tran filed motions to suppress statements alleging violations of

*Miranda v. Arizona*, 384 U.S. 436 (1966) and the Fifth Amendment.  The Court held an

1    evidentiary hearing beginning on February 2, 2013 and after a recess for a few weeks

2    completing the hearing on April 18, 2013.

3           To begin with, the Government has the burden of proving by a preponderance of

4    the evidence that these statements were knowingly, intelligently and voluntarily given by

5    each of the Defendants to law enforcement.  *See United States v. Younger*, 398 F.3d

6    1179, 1185 (9th Cir. 2005).  The first question in an inquiry regarding statements given to

7    police officers and the need to inform a defendant of his or her *Miranda* rights is whether

8    the person interrogated is in custody.  *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

9    The Government has conceded that both Defendants were in custody and not free to

10   leave.  Therefore, *Miranda* warnings were required in order to interrogate these

11   defendants and this was understood by the officers who testified.

12          There is no question raised in these proceeding as to whether in both cases the

13   Defendants were informed of all their rights as required by *Miranda*.  The question then

14   for each Defendant is "did their subsequent answering of questions constitute a knowing

15   and voluntary waiver of their rights?"  *Younger*, 398 F.3d at 1185.

16          The Court will first address this question in connection with the answers and

17   statements made by Tran. Tran has a very limited understanding of the English language.

18   This was recognized by Detective Jeffrey Brockus ("Brockus") so he determined that

19   Tran would need an interpreter qualified to provide translation services from someone

20   who was fluent in the Vietnamese language.  Accordingly, Brockus requested the

21   assistance of Detective Thanh Nguyen ("Nguyen") from the Portland Police Department

22   in order to provide to Tran, in an effective manner, his *Miranda* rights.

1    Nguyen is fluent in Vietnamese and is an experienced law enforcement officer

2    working as a detective with the Portland Police Department. He testified that he either

3    had Defendant Tran read aloud the *Miranda* rights from a card, admitted as Exhibit A, or

4    he read from the card to him. It contained all the rights required and Nguyen asked Tran

5    in the Vietnamese language whether he waived his rights, to which Tran answered that he

6    wanted to talk.  Although Nguyen was unable to recall whether he read aloud the rights to

7    Tran or had Tran read the card aloud, Tran recalled that the rights were read to him. Tran

8    does not recall whether he was also given the card to read himself.  Brockus corroborated

9    that the rights were read; though again, whether Nguyen read them aloud or Tran did,

10   was not clear from his testimony. It is clear that one or the other (or both) occurred; when

11   the testimony of Nguyen, Tran and Brockus are taken together there can be no doubt that

12   Tran was given all the *Miranda* rights in Vietnamese. Further, the officer's qualifications

13   to provide an accurate interpretation or understand Tran are likewise not in doubt. Even

14   though he was a law enforcement officer there is no evidence that he did not provide an

15   impartial and accurate translation in providing the warnings, asking the questions and

16   interpreting the answers.  Therefore, the Court finds that Tran understood fully his

17   *Miranda* rights.

18       The next question is whether he voluntarily waived his rights. *Younger*, 398 F.3d

19   at 1185.  There were no explicit written or oral express waivers and there is a

20   presumption against waiver.  *Id*.  The presumption is stronger when there is not a written

21   waiver.  *Id*.  Where, as here, Tran said he wanted to talk and then began answering

22   questions, the Court considers the totality of the circumstances in determining whether

his giving statements was voluntary and constituted a waiver.  *See United States v. Reid*, 226 F.3d 1020, 1026 (9th Cir. 2000).  He was advised of his rights in his native language through an interpreter and appeared to Nguyen to understand his rights. There is no evidence that Tran had prior experience with the criminal justice system. He was calm but scared. Even so, there was no evidence of coercion or intimidation beyond the ordinary circumstance when being questioned in an interrogation room by a couple of non-uniformed law enforcement officers. Tran was not in handcuffs. Being scared alone is not sufficient to render statements involuntary unless it is the product of psychological or physical coercion. Being scared, however, can affect the ability of one to understand the information given and thus affect his knowing and intelligent waiver. The evidence, however, does not establish that he was scared to the point of rendering him unable to comprehend his rights or voluntarily agree to talk. The Court finds under the totality of the circumstances that Tran knowingly, intelligently and voluntarily waived his rights under *Miranda*.

With respect to Trieu, she too was fully informed of her rights.  In her case the rights were given in English because she was fluent in her use of English as was demonstrated in his preliminary conversation with Sargeant Shane Gardner ("Gardner"), who had been employed with the Clark County Sheriff's Office since 1998. There is no challenge to the contention that she was able to understand English; there was no language barrier.  Gardner has substantial experience in arresting individuals and advising them of their *Miranda* rights.  He testified that he read Trieu her *Miranda* rights from his card.  While there was lacking specific testimony on precisely what that card

1    contained, the Court accepts without any contrary evidence that this experienced officer,

2    knowing what those rights are and using a standard card to read from, informed her of her

3    *Miranda* rights.  When asked if she understood her rights she answered that she did.

4    When asked if she waived her rights she, like Tran, said she was willing to talk.  Neither

5    she nor Tran was required to say, or sign a written document with the words, "I waive my

6    rights." It is sufficient that both were informed of their *Miranda* rights, that they were

7    understood, and that they expressed their willingness to talk. Just as with Tran, there is no

8    reason to doubt that Trieu understood her rights as given to her in a language she was

9    conversant in. The waiver was knowingly and intelligently made.

10          So the issue next before the court was whether Trieu's answers to questions were

11    voluntarily given or whether they were the product of physical or psychological coercion

12    or given after improper inducement by making promises, as alleged by Trieu.  Taking the

13    issue of promises first, there was nothing improper in Gardner encouraging her to

14    cooperate by informing her that he had not determined whether she was going to jail that

15    day or not. Similarly, it was not improper for him to tell her that he hoped he did not have

16    to take her into custody since she had a child to look after. Encouraging a person

17    suspected of a crime to help themselves through cooperation has been routinely upheld as

18    permissible by the Ninth Circuit. There is no evidence of physical coercion. The mere

19    fact the officers were dressed in uniform with swat gear and firearms that were not drawn

20    at the time of Gardner's questioning does not by itself create a coercive environment and

21    is not uncommon.

22

1    The Court also must view the circumstances to determine whether the

2  conversation with Gardner presented improper psychological coercion. The only

3  evidence offered on this point was Trieu's fear that she might be going to jail that day

4  and that her child would be left alone.  However, it is not reasonable to believe that she

5  thought that law enforcement would not see to the care of her child if she was taken into

6  custody. In any case this was not the kind of circumstances that amount to impermissible

7  psychological coercion.

8    Finally, another issue arose concerning her statement during the interview that she

9  did not want to answer the question of how much marijuana was in the house. She was

10  told she did not have to answer that question. It was not improper then to proceed to

11  asking other questions which she, without apparent objection, freely answered. On this

12  point, however, there is some disagreement in the testimony as to whether, as she

13  testified, she was indicating in her answer that she did not want to answer any more

14  questions or whether, as he testified, she did not want to answer only the question relating

15  to the quantity of marijuana in the house. The Court accepts Gardner's version. He has

16  less incentive to mislead the Court than Trieu does, his testimony more closely conforms

17  to the content of his report, and Trieu demonstrated her willingness to be assertive,

18  tending to prove that she would not have likely continued to answer questions

19  involuntarily but would have injected an objection or at least again asked whether she had

20  to answer the subsequent questions. Whether one accepts Trieu's testimony or Gardner's,

21  the evidence is clear that her interjection was respected at least to the question concerning

22  the quantity of marijuana, which supports the conclusion that she would again interrupt

the interview if she was unwilling to answer more questions.  Therefore, viewing the totality of the circumstances, the Government has met its burden of proving that the statements taken from both defendants on the day of their arrest were made knowingly, intelligently and voluntarily.

Therefore, it is hereby **ORDERED** that Trieu's motion to suppress (Dkt. 136) and Tran's motion to suppress statements (Dkt. 139) are **DENIED**.

Dated this 30th day of April, 2013.

BENJAMIN H. SETTLE
United States District Judge